EDWIN WRIGHT, Plaintiff in Error, v. JOSEPH GROVER et al., Defendants in Error.

ERROR TO COLES.

Fraud must always be proved; the law never presumes it.

A complete transfer of personal property may be made, although the purchaser should not hold continuous possession. If the property is returned to the possession of the vendor, the fact may create suspicion, but is not conclusive of the fairness of the transaction.

THIS case originated in the trial of right of property, before Malden Jones, Esq., the acting sheriff of Coles county, in

which Edwin Wright was claimant, and Joseph Grover, Lindle Madison, Benjamin C. Shaw and James H. Conner, were plaintiffs in execution; which resulted in a verdict against the claimant, who removed the case into the Coles Circuit Court, by appeal.

A trial of the cause was had by a jury, who returned a verdict against the claimant. Motion by claimant for new trial. Motion overruled; whereupon claimant excepted, and obtained leave to file his bill of exceptions, and judgment was rendered by the court upon the verdict.

The bill of exceptions shows, that on the trial of the cause before HARLAN, Judge, and a jury, the claimant offered in evidence a bill of sale, which is set out in *hæc verba* therein, executed by James M. Riddle, and witnessed by David H. McFadden, by which it is witnessed that Riddle, in consideration of the payment of $2,000, bargained, sold and delivered unto the claimant, Wright, various articles of personal property; that claimant then introduced the deposition of David H. McFadden, which proves that he (McFadden) was present when sale was made between Riddle and Wright; that after the sale, the property was brought back to Riddle's farm, and was there used as before, except that Wright claimed the property, and generally directed what should be done on the farm. Deponent identified the bill of sale signed by him as witness; that the property was taken from the farm to Mattoon before sale, and afterwards returned, and remained on the farm while witness remained there—four or five months; that Riddle and Wright both gave orders about the management of the property; that the property described in the sale bill was the same taken to the farm and afterwards claimed by Wright; that after the sale, witness considered the property as belonging to Wright.

The defendant then called *James R. Cunningham,* who testified that he was attorney for defendants (the plaintiffs in execution); that he went with the officer to find property of Riddle and McFadden; found the property in controversy upon the Wright farm; Riddle was using the same; Riddle lived on Wright's farm; did not know whether a hired hand or not; Riddle told witness at time of levy that the property was Wright's.

*Harvey B. Worley* testified, that he knew Riddle lived upon Wright's farm, but did not know in what capacity; that Wright lived sometimes on farm with Riddle and sometimes at Mattoon, up to time of levy and since; used the horses frequently; had conversation with Wright before levy, in which he said he had bought property from Riddle; that he had

leased the farm sometime before he bought the property; that he took the property and applied the rent as part payment; that Wright has no family, but lives with Riddle on farm; some 300 acres in cultivation on the farm.

The claimant asked the following instructions from the court:

1. That the law never presumes any transaction fraudulent.

2. That a party seeking to set aside a sale on account of fraud, must allege and prove the same.

3. That any and all acts and declarations of the claimant are to be considered by the jury in determining the possession of the property after the date of the sale from Riddle to claimant; and if, from all the evidence, the jury believes that claimant was in possession of the property in controversy, or had been in possession under a sale from Riddle to claimant, then they should find for the claimant, unless the property had been resold to Riddle.

4. That in defining what it takes to constitute a delivery, it is right and proper that the jury should take into consideration the situation of the parties at the time of the sale, and also take into consideration the situation of the article or articles sold.

5. That if they believe, from the evidence, that Riddle, the defendant in the execution, was *bona fide* indebted to Wright, the claimant of the property, that Riddle had the right to prefer creditors, and even exhaust all his effects in payment of said creditors' claim.

6. That although Riddle might have made the sale to Wright for the purpose of hindering or delaying creditors, yet if Wright, before or at the time of the purchase of the property from Riddle, had no knowledge of such facts, then the sale cannot be fraudulent as to creditors and purchasers, so far as the claimant's rights are concerned, and it devolves upon the defendants to show, by legal evidence, that Wright had such notice, either before or at the time of the purchase of said stock.

The court gave the third, fourth and fifth of said instructions, (refusing the third, however, as asked, but modifying it by inserting the words "and remained" after the words "or had been," in the fourth line from the bottom of instructions,) but refused to give the first, second and sixth. Whereupon claimant excepted to the modifying of the third instruction, and refusing to give the first, second and sixth.

The court gave the following instructions at the instance of defendants, to which claimant objected:

1. That actual possession must accompany and follow the

sale of personal property, when the sale is practicable, to make the sale binding on judgment creditors and subsequent purchasers.

2. That sales of personal property, when the possession does not accompany the sale, but remains with the vendor or seller, are fraudulent and void as to creditors and subsequent purchasers; and the conditions of the parties at the time of the sale—the vendee residing with the vendor—does not take the sale out of this rule of law.

3. That the change of possession, to be effectual, must not be merely nominal or momentary, but must be real, actual and open, and such as may be publicly known as a continual possession by the vendor, as ostensible owner after an absolute sale, though it be under articles of agreement with the vendee that the vendor shall be employed as his overseer, or under a contract of hire, is equally fraudulent and void.

4. A sale of personal property, to be binding upon creditors and subsequent purchasers, must be entered into *bona fide* and in good faith, and not with the intent of hindering or delaying creditors. Sales of personal property, to be effectual and valid against third parties, must be for a valuable consideration, moving from the vendee to the vendor.

5. That if there was not an open, positive change of the possession of the property, as evinced by the evidence, (if sold at all,) and that change of possession continued, so that creditors, or those who might have become purchasers, under ordinary circumstances, would have notice thereof, by virtue of such change and continued change of possession, that the law is against the claimant, Wright, and he cannot, under such purchase, hold the property against the execution of defendants.

6. That a bill of sale of personal property, where the possession remains with the vendor, is fraudulent and void in law, and is not good against creditors and purchasers without notice, unless acknowledged before a justice of the peace, in the precinct or township where the vendor resides, and recorded in the records of the county where executed.

7. That it is not necessary for a party to intend to commit fraud, in the sale of personal property, where there is no open, visible change of possession of such property into the hands of the purchaser, to constitute a fraud under the laws of Illinois; but if such possession does not accompany the sale, and continue openly with the vendee, it is a fraud against creditors and purchasers, and cannot be explained.

8. That in every sale of personal property there must be immediate, and actual, and continued change of possession, and

unless this appear from the evidence, the sale shall be presumed to be fraudulent and void.

9. That it devolves upon the claimant to prove that the property is his, and that he must do so by affirmative testimony.

10. That the form of the verdict in such a case is this: "We, the jury, find the right of property *to be* (or *not* to be) in the claimant.

The grounds assigned for a new trial were as follows: the refusal to give claimant's instructions one, two and six; the refusal to give claimant's instruction number three, as asked, and the modifying the same; and the giving of defendants' instructions.

The claimant, who is plaintiff in error, assigns as specifications of error in the foregoing record, the following: the refusal of the court to give claimant's instructions Nos. 1, 2 and 6; the modifying of claimant's third instruction; the giving of defendants' instructions; and the refusal to grant a new trial.

CONSTABLE & ALLISON, for Plaintiff in Error.

O. B. FICKLIN, for Defendants in Error.

CATON, C. J. The court certainly erred in refusing to instruct the jury, that the law will not presume that a fraud had been committed. The law never does presume a fraud; that fact must always be proved, either by direct or circumstantial evidence. When there is no evidence of fraud, neither the court or jury have the right to infer or presume it.

Nor was it necessary to the validity of the complete transfer of the property, that the possession should be continued in the purchaser, as was held by the court, by the modification of the claimant's third and fifth instructions. *Brown* v. *Rielly*, 22 Ill. 45. If, after the delivery to the purchaser, he subsequently returned it to the vendor, it may be a circumstance tending to show only a colorable transaction, more or less cogent, according to the circumstances. But it certainly may be explained. The judgment is reversed, and the cause remanded.

*Judgment reversed.*