ANTHONY C. HESSING

*v.*

MARY O. McCLOSKEY.

1. FRAUD—*possession by a vendor of goods, of a part—its effect upon the vendee's right as to the residue, not in the vendor's possession.* A debtor sold and delivered a lot of goods in New York, which were shipped by the purchaser to Iowa. A portion of the goods were seized *in transitu*, while in possession of the agent of the vendee, under writs of attachment sued out by creditors of the vendor; the sale being a *bona fide* one, it was held, that the title of the vendee to this portion of the goods could not be affected by the fact, even if such fact existed.

| 37 | 341 |
| 23a | 313 |
| 24a | 582 |
| 37 | 341 |
| 31a | 376 |
| 37 | 341 |
| 38a | 441 |
| 37 | 341 |
| 45a | 350 |
| 37 | 341 |
| 47a | 112 |
| 37 | 341 |
| 68a | 285 |
| 37 | 341 |
| 89a | ²213 |
| 37 | 341 |
| 198 | ²306 |
| 37 | 341 |
| 105a | ⁴636 |

that the residue of the goods had reached their destination, and were in the possession of the vendor. The goods thus seized, while in the possession of the vendee's agent, stood unembarrassed by any difficulties which might have surrounded that portion which had reached their destination.

2. FRAUDULENT CONVEYANCE—*both parties must participate in the fraudulent intent.* In order that a transfer of goods shall be deemed fraudulent as to creditors of the vendor, both the vendor and his vendee must be guilty of the fraudulent intent.

3. SAME—*a party, though in debt, may sell his property.* A party, though in debt, may sell his property to any one he pleases, for an honest and fair consideration, if no lien exists to forbid it. If the transaction be an honest one, made in good faith, and for an adequate consideration, it matters not how many creditors may be prevented thereby from reaching the property.

4. A DEBTOR MAY PREFER HIS CREDITORS. And a debtor, in the sale of his property, has a right to prefer one creditor over all others. He may sell his property to one of his creditors in payment of his debt to him, to the exclusion of other creditors, and the consideration will be sufficient to support the transfer.

5. TRESPASS—*de bonis asportatis—against a sheriff—and herein of the measure of damages.* Where there has been a *bona fide* sale and delivery of goods by the owner to any one of his creditors, in payment of a debt, and the goods are afterwards taken by the sheriff, under writs of attachment sued out by other creditors of the vendor, the vendee may maintain trespass against the sheriff, and recover, as damages, the value of the goods at the time of such taking, with interest from that time to the time of trial, at the rate of six per cent. per annum.

6. EVIDENCE—*subsequent declarations and acts of a vendor.* The declarations or acts of a vendor of property, which he has sold and delivered, cannot be received to prejudice the title of his vendee.

7. INSTRUCTIONS—*need not embody all the law governing the case.* An instruction which declares the law on the points therein presented, is sufficient, although it does not present all the law governing the case.

8. SAME—*embodying mere abstract propositions of law, may be refused.* Where an instruction asked contains a mere abstract legal proposition, though correctly stated, error cannot be assigned on the refusal of the court to give it.

9. SAME—*if embraced in another, may be refused.* An instruction which is fully embraced in another, already given, may properly be refused.

10. SAME—*must be based upon the evidence.* An instruction not based upon the evidence should not be given.

APPEAL from the Superior Court of Chicago.

This was an action of trespass *de bonis asportatis*, brought in the Superior Court of Chicago by Mary O. McCloskey, against Anthony C. Hessing. To the declaration, the defendant pleaded a seizure of the goods, as sheriff, on process in his hands to be executed, against Cyrus M. Bellamy. The plaintiff claimed the goods by purchase from C. M. Bellamy before the writs of attachment were issued. Much evidence was introduced as to the *bona fides* of the transaction, which it is unnecessary to state, inasmuch as the case is made to turn upon the instructions given on behalf of the plaintiff, and refused on the part of the defendant.

The instruction given for the plaintiff was as follows:

Although the jury may believe, from the evidence, that the possession of the goods at McGregor, Iowa, was in Cyrus M. Bellamy, and not in the possession of George T. Bellamy, as the agent of the plaintiff, yet the right of recovery for these goods being in Chicago *is not necessarily thereby affected;* and if the jury believe, from the evidence, that the sale in New York was a fair one, and the possession of the goods in Chicago was in the plaintiff, or her agent, then in that case, the plaintiff might recover for these goods in Chicago, although she might not have been enabled to have recovered had she sued for a seizure of the goods at McGregor.

To the giving of this instruction, the defendant then and there excepted.

The following instructions were asked by the defendant, and refused, and exceptions taken:

That every grant or conveyance of goods and chattels, by writing or otherwise, had or made or continued to the intent or purpose to delay or prevent creditors from reaching the goods and chattels in satisfaction of their lawful debts, is absolutely void.

If the jury believe, from the evidence, that the arrangement of the transfer in question was entered into by the plaintiff and Cyrus M. Belamy, to enable him to remove the

goods from New York to Iowa, to prevent his creditors from reaching the same, then the jury will find a verdict for the defendant.

If the jury believe, from the evidence, that the transfer of the goods by Cyrus M. Bellamy to the plaintiff, was made under cover of the plaintiff's claim and judgment, to enable him to remove the goods from New York, out of the reach of the creditors of T. Bellamy & Son, to prevent creditors reaching them, then the transfer is absolutely void; although the plaintiff may have had a *bona fide* debt and judgment against Cyrus M. Bellamy, and your verdict will be for the defendant.

The jury are instructed as matter of law, that if they believe, from the evidence, that the plaintiff had a *bona fide* debt against Cyrus M. Bellamy, and used it, or allowed it to be used to cover the goods in question, to enable Cyrus M. Bellamy to remove the goods from New York city, to be used for the benefit in any way, or to prevent his creditors from reaching the same in satisfaction of their debts, then the transfer is absolutely void, and the jury will find for the defendant.

The jury are instructed as matter of law, that if they believe from the evidence, that Thomas Bellamy transferred his interest in the goods of Cyrus M. Bellamy, that he was to pay the company debts first, that the five thousand dollars had by Thomas Bellamy, in 1859, of the plaintiff, was to be capital at the risk of the business; then the giving of a note by Cyrus M. Bellamy to plaintiff, on December 10, 1860, for that amount, and interest, and allowing a suit to be instituted by the plaintiff immediately upon that note, against him, without notice to his creditors; then such facts raise a strong presumption of fraud in the whole transaction.

The jury are instructed as matter of law, that it is not necessary that there should be positive proof of fraud; that fraud may be presumed from facts and circumstances proved in the case, and if the jury believe, from the evidence, that

the transfer was made with the intent to hinder or delay the creditors in the collection of their debts against T. Bellamy & Son, or to enable Cyrus M. Bellamy to appropriate the goods, or any part of them, to his use after the transfer, to the injury of his creditors, then the transaction is void, and the jury will find for the defendant.

The jury are instructed, that if they believe, from the evidence in this case, that at the time of the sale of the goods in controversy was made by Cyrus M. Bellamy to the plaintiff, the said Bellamy was involved in debt, and that the plaintiff, or her agent or agents knew it, and that such sale was made by the parties thereto, for the purpose of enabling the said Bellamy to control said goods, and have the benefits thereof, so that his creditors could not reach the same, then the sale is void, and the plaintiff cannot recover.

The jury are instructed that the intent of the parties to the sale of the goods in controversy from Cyrus M. Bellamy to the plaintiff, may be determined from the acts of the parties thereto, both before and after such sale; and if the jury believe, from the evidence in the case, that the sum of $5,000 was advanced by plaintiff to Thomas Bellamy for the purpose of being used by him, as capital at the risk of his business, that Thomas Bellamy and Cyrus M. Bellamy, during the time they were in business together, contracted debts which were owing by said firm at the time the sale was made to plaintiff, that she, or her agents, knew of such indebtedness, that Cyrus M. Bellamy, a short time after his purchase from his father, went West with the intention of finding a location to which he could transfer his business, and that plaintiff, or her agent, knew that fact, that said Bellamy made arrangements for going into business at McGregor's Landing, Iowa, and then returned to New York, that immediately after his return the sale was made, and upon his advice the goods were immediately after the sale shipped to McGregor's Landing, to the care of George M. Counts, that Bellamy individually afterwards wrote said Counts advising him that

the goods had been shipped to him and requesting him to rent a store, that said Bellamy afterwards went to McGregor, paid the freight on said goods, put them in the store and exercised acts of ownership and control of them, that he finally negotiated and effected a sale of said stock of goods, and has since, with his brother, been using the avails thereof, with the consent of the plaintiff, and that she has never been paid over said avails, and has never demanded the same, then the jury would have the right to consider such facts as badges of fraud in determining whether the purpose of the sale from Bellamy to plaintiff was to enable Bellamy to control the property and keep the same beyond the use of creditors.

The following instruction was given by the court on its own motion:

The court instructs the jury that the main question in this cause is as to the honesty and good faith of the alleged transfer of the goods in question from Cyrus M. Bellamy to the plaintiff. If that sale was in good faith, for an adequate consideration for the purpose of paying a debt or debts, which he owed to her, and if the possession of the goods was delivered to her, or to Mr. Shuard, or George T. Bellamy, acting for her, by her authority, for her use, then no subsequent acts or declarations of Cyrus M. Bellamy, as to the goods that arrived at McGregor's Landing, would affect her title or right to recover for the taking of the goods in question, and therefore, if the jury believe, from the evidence, *that the goods were so transferred as above mentioned,* and if the jury further believe, from the evidence, that the defendant took the goods in question, under the attachments against Cyrus M. Bellamy, after such transfer and delivery, then the plaintiff is entitled to recover as damages in this action, the value of the goods at the time of such taking, with interest from that time to the present, at the rate of six per cent. per annum. But if on the contrary, the jury

find, from the evidence, that such transfer was not in good faith, for an adequate consideration as before mentioned, or that the possession was not delivered as before mentioned, and if the jury find, from the evidence, that the defendant, as sheriff of Cook county, Illinois, took the goods under writs of attachment against Cyrus M. Bellamy, in favor of persons who were creditors of Cyrus M. Bellamy, upon debts existing. at the time of such transfer, then the plaintiff is not entitled to recover in this action.

To the giving of which by the court, the counsel for the defendant then and there excepted.

The jury found a verdict for the plaintiff, on which the court rendered judgment. The defendant brings the case to this court by appeal.

The questions presented under the assignment of errors, relate to the character which will attach to the transfer of goods by a debtor to one of his creditors in payment of a debt, to the exclusion of his other creditors; there are also some minor questions presented as to the sufficiency of some of the instructions given to the jury.

Mr. E. S. SMITH for the appellant.

Mr. J. W. SMITH and Mr. J. P. ATWOOD for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the court:

This was an action of trespass *de bonis asportatis*, brought in the Superior Court of Chicago by appellee against appellant.

The issues were made up on the plea of not guilty, and four special pleas, by which the defendant sought to justify the taking, by virtue of four different writs of attachment in his hands as sheriff of Cook county, against the goods and chattels of Thomas and Cyrus M. Bellamy.

The jury found the defendant guilty, and assessed the damages at two thousand and four hundred and seventeen

50-100 dollars, for which the court, on overruling a motion for a new trial, rendered judgment.

The controversy, therefore, is between the vendee and the creditors of the vendor, for the value of the goods and chattels, which consisted of clothing and some piece goods.

The leading question before the court and jury was, as to the validity of the sale from Cyrus M. Bellamy to appellee. There was much testimony on the point, which is all carefully preserved, and which we have considered, and which, in our judgment, establishes the validity of the sale.

The only question, therefore, before us, is, was the case fairly submitted to the jury, by the instructions of the court?

The appellant insists it was not so submitted, and complains that the court gave this instruction for the plaintiff, numbered three:

Although the jury may believe, from the evidence, that the possession of the goods at McGregor, Iowa, was in Cyrus M. Bellamy, and not in the possession of George T. Bellamy, as the agent of the plaintiff, yet the right of recovery for these goods being in Chicago, *is not necessarily thereby affected;* and if the jury believe, from the evidence, that the sale in New York was a fair one, and the possession of the goods in Chicago was in the plaintiff, or her agent, then in that case, the plaintiff might recover for these goods in Chicago, although she might not have been enabled to have recovered had she sued for a seizure of the goods at McGregor.

To understand the bearing of this instruction, it is necessary to state, that on the sale being consummated in New York, the agent of the plaintiff had them boxed up in a large number of boxes, and marked to one Counts, at McGregor, Iowa. Some of the boxes arrived there, and were taken into the possession of George T. Bellamy, the brother and agent of the plaintiff, whilst these in controversy were seized at Chicago, in their transit to McGregor.

There was some testimony tending to show that the goods which reached McGregor came into the possession of Cyrus M. Bellamy, the vendor. We think, under this state of facts, that if so, the goods seized at Chicago could not and ought not to be affected by it. They were in the possession of the plaintiff's agent at Chicago, and stood unembarrassed by any difficulties which might have surrounded that portion of the goods which reached McGregor. The court did not intimate, in this instruction, as the counsel for appellant argues it did, that appellee could not have recovered for the goods at McGregor, had they been seized. The language used by the court is susceptible of no such meaning. It simply told the jury, that although the plaintiff might not have been enabled to recover those goods which reached McGregor, had she sued for a seizure of those goods, still that did not prevent her from recovering those goods which were taken out of the possession of her agent at Chicago, if the sale in New York was a fair one. If there be a fault in this instruction, it is against the plaintiff, and injured her case, if injury it did in any quarter. The truth of the matter is, if the sale in New York was a fair sale, we do not see how the goods could have been seized at McGregor, and taken out of the possession of her agent there.

But to place the whole matter in the clearest light possible, the court, of its own motion, gave to the jury the following instruction, and numbered four :

The court instructs the jury that the main question in this cause is as to the honesty and good faith of the alleged transfer of the goods in question, from Cyrus M. Bellamy to the plaintiff. If that sale was in good faith, for an adequate consideration for the purpose of paying a debt or debts, which he owed to her, and if the possession of the goods was delivered to her, or to Mr. Shuard, or George T. Bellamy, acting for her, by her authority, for her use, then no subsequent acts or declarations of Cyrus M. Bellamy, as to the goods that arrived at McGregor's Landing, would affect her

title or right to recover for the taking of the goods in question, and therefore, if the jury believe, from the evidence, that the goods were so transferred as above mentioned, and if the jury further believe, from the evidence, that the defendant took the goods in question, under the attachments against Cyrus M. Bellamy, after such transfer and delivery, then the plaintiff is entitled to recover as damages in this action, the value of the goods at the time of such taking, with interest from that time to the present, at the rate of six per cent. per annum. But if on the contrary, the jury find, from the evidence, that such transfer was not in good faith, for an adequate consideration as before mentioned, or that the possession was not delivered as before mentioned, and if the jury find, from the evidence, that the defendant, as sheriff of Cook county, Illinois, took the goods under writs of attachment against Cyrus M. Bellamy, in favor of persons who were creditors of Cyrus M. Bellamy, upon debts existing at the time of such transfer, then the plaintiff is not entitled to recover in this action.

Here is the whole case narrowed down by this instruction to a very small compass, rendering any other instruction wholly unnecessary. But the counsel for appellant take exception to this instruction, and because the court introduced the name of George T. Bellamy into it, as receiver of the goods as agent of the plaintiff, it was erroneous, for the reason, there is no evidence connecting him with the delivery of the goods.

About this, the counsel are certainly mistaken. Mr. Shuard testifies that George T. helped to pack the goods in New York, and to mark them for McGregor's Landing. He also stated on his recall and reëxamination, in reply to the question, what arrangement was made between him and plaintiff in reference to who should take the custody of the goods from the time of their leaving New York, he answered, the arrangement was, that her brother, George T. Bellamy, was to go on with the goods, and should go West, and

attend to the sale of the goods, and if he needed any specific instructions, he was to stop on his way, and see Mr. Townsend, who had charge of her matters, and he would direct him. It was also proved by the testimony of Cyrus M. Bellamy, that the plaintiff had executed to George T. a power of attorney to act for her, which was produced and read on the trial. This is sufficient evidence to justify the court in connecting George T. Bellamy with the transaction in the mode it was done by the court, and is not obnoxious to the criticism bestowed upon it by appellant.

But it is further insisted, the instruction was improper, because it did not tell the jury what was good faith in a contract of sale, and what was, in law, an adequate consideration. Did the appellant desire the jury should be informed on these points, it was quite easy for him to have asked instructions to enlighten the jury. It is sufficient, if the instructions which the court gives declare the law on the points presented. So far as this instruction went, and to the extent asked, it was a proper instruction. None of the exceptions taken to it can prevail, as it embodies the law of the case, and directed the minds of the jury to the real points in controversy.

But it is further insisted by appellant, that the case was not fully submitted to the jury, for the reason the court refused to give certain instructions asked on his behalf.

The first of those instructions was this:

That every grant or conveyance of goods and chattels, by writing or otherwise, had or made or continued to the intent or purpose to delay or prevent creditors from reaching the goods and chattels, in satisfaction of their lawful debts, is absolutely void.

There are several objections to this instruction. The first is, the Statute uses the word "contrived," not continued, and also uses, in connection therewith, the words "of malice, fraud, covin, collusion or guile to the intent or purpose to

delay, hinder or defraud creditors of their just and lawful actions," etc. Second, Both parties must be guilty of this intent. *Ewing* v. *Runkle*, 20 Ill., 448. As asked, it was calculated to mislead the jury. Besides, as it purported to contain a mere abstract legal proposition, if correctly stated, error could not be assigned on the refusal of the court to give it. *Atkinson* v. *Lester*, 1 Scam., 407; *Corbin* v. *Shearer*, 3 Gilm., 482.

The fourth instruction was properly refused, for the reason that the *bona fides*—the honesty of the arrangement, is left wholly out of the question. We understand the rule of law to be, if the transaction be an honest one, made in good faith and for an adequate consideration, it matters not how many creditors may be prevented thereby from reaching the property. It is well settled, a party though in debt, may sell his property to any one he pleases, for an honest and fair consideration, if no lien exists to forbid it. Nor can it be denied that a debtor has a right to prefer one creditor over all others. *Waddams* v. *Humphrey et al.*, 22 Ill., 661. And besides, this instruction was fully embraced in the instruction given by the court, on its own motion. The fifth instruction is liable to the same objection. The sixth is as follows :

If the jury believe, from the evidence, that the plaintiff had a *bona fide* debt against Cyrus M. Bellamy, and used it, or allowed it to be used to cover the goods in question, to enable Cyrus M. Bellamy to remove the goods from New York, to be used for the (his) benefit in any way, or to prevent his creditors from reaching the same in satisfaction of their debts, then the transfer is absolutely void, and they will find for the defendant.

This instruction is open to several objections. In the first place, there is no evidence on which it can be based. The proof is, there was an actual sale and delivery of these goods to appellee, for an adequate price paid by her, and an actual delivery to her agent, who took the necessary

steps to ship them West to McGregor. After this sale and delivery, appellee had no debt existing against C. M. Bellamy, it was fully paid and satisfied by the sale and delivery. In the next place, appellee being the owner of the goods purchased in good faith, and for an adequate consideration, had a right to do with them as she pleased —to ship them to McGregor, or elsewhere as her judgment inclined.

The seventh was properly refused, as there is no evidence that Cyrus, when he took the stock of goods from Thomas Bellamy & Son, was first to pay the company debts, or that the five thousand dollars appellee had loaned Thomas Bellamy was to be at the risk of the business, as so much capital invested. The weight of the evidence most clearly is, that it was a loan, and not a contribution of capital.

The eighth is liable to the objections pointed out to the defendant's first instruction.

The ninth is in the same category. The law is, that both parties must contrive the conveyance with malice, fraud, covin, collusion or guile. They must both be guilty of the contrivance and intent. *Ewing* v. *Runkle*, above cited.

Instruction numbered ten is objectionable in this, that the declarations or acts of a vendor of property, which he has sold and delivered, cannot be received to prejudice the title of his vendee. Nor do we understand the evidence as sustaining the prayer for this instruction.

We think the whole law of the case was fully and correctly given to the jury in the instruction of the court on its own motion. No good ground of exception has been taken to that instruction, and it covers the whole case.

Were not the active parties in this sale of the goods near relatives it is not at all probable any suspicion would have been excited as to the fairness of the transaction. A *bona fide* debt, equal to one-half the fortune of appellee was due her for advances made her father and her brother, and the latter, when in failing circumstances, chooses to prefer his

sister as a favored creditor, as she necessarily was, and as he has a perfect right to do, to the exclusion of other creditors not so meritorious. The testimony of Mr. Townsend explains the whole transaction, and frees it, and the parties engaged in it, from all suspicion of fraud. The evidence fully sustains the jury in the conclusions to which they arrived, and the court ably and clearly expounded the law to them.

There being no error in the record, the judgment must be affirmed.

*Judgment affirmed.*