Jack J. Melody and James N. Melody, Trading as Arcola Motor Company, Appellees, v. Arcola State Bank, Appellant.

Gen. No. 8,139.

Opinion filed January 25, 1928.

CRAIG & CRAIG, for appellant.

COTTON & NICHOLS and A. C. & BEN F. ANDERSON, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

The issues in this case arise out of a trial over the right of personal property brought by appellees, petitioners, in the county court of Coles county, against appellant. On January 27, 1927, one Ed Radcliff executed a promissory judgment note to appellees for the sum of $1,000, and to secure said note said Radcliff executed a chattel mortgage to appellees, covering various items of personal property and including "also twenty acres of growing wheat, located in the S. W. corner of the S. W. ¼ of Section 25, Twp. 14 North, Range 8 East of 3rd P. M. Coles County, Illinois." The chattel mortgage described Radcliff as of Humboldt Township, Coles county, Illinois, and was properly acknowledged before a justice of the peace and recorded with the recorder of deeds in said county.

On February 11, 1927, appellant bank caused a note which it held against said Radcliff to be entered in judgment and an execution issued, which was placed in the sheriff's hands, who proceeded to levy upon the same property described in the chattel mortgage, including the growing wheat, described "as the south 20 acres of the west one-half of the northwest quarter of Section 25, Town 14 North, Range 8 East of 3rd P. M., Coles County, Illinois." The growing wheat was actually upon the lands described in the levy by the sheriff, and was not upon the southwest quarter of said section 25. Appellees gave the notice required

by the statute. There was a hearing and trial before the court, a jury having been waived, and a finding and judgment for appellees, from which appellant has prosecuted this appeal.

Appellant assigns error that the wheat growing was improperly described in the chattel mortgage, so that appellees secured no lien upon the same by virtue of the chattel mortgage, and that parol testimony was erroneously admitted in regard to the location of the growing wheat. It was shown that said Radcliff did not own or cultivate any part of the southwest quarter of said section, and that no wheat was growing upon the same, and that the only growing wheat owned by Radcliff was situated upon a part of his farm which was in the northwest quarter of said section. We cannot agree with the appellant's contention. It was held in *Brenneman v. Dillon,* 296 Ill. 140, 147: "A deed will not be held void for uncertainty in description if by the aid of extrinsic evidence it can be made certain and the property located. A false description may be rejected for the purpose of giving effect to the deed if the true words are sufficient to designate the land. (8 R. C. L. 1071–1073.) A deed to 'two entire sections of land lying and situated in the marine settlement and State of Illinois and patented to' the grantor was held sufficiently definite by the aid of extrinsic evidence showing the two sections of land which had been patented to the grantor and that no other sections had been entered by him to which the description could apply, in *Choteau v. Jones,* 11 Ill. 300. It has uniformly been held by this court that a description is sufficiently definite which will enable a surveyor to locate the property, either with or without the aid of extrinsic evidence. (*Koelling v. People,* 196 Ill. 353; *Kleiner v. Bowen,* 166 id. 537; *Hayes v. O'Brien,* 149 id. 403; *Colcord v. Alexander,* 67 id. 581.)"

It was further held in this case: "Deeds are to be construed most favorably to the grantee, and conflicting descriptions should be reconciled, if possible, and the construction adopted which best comports with the intention of the parties. A deed to 'my house and lot,' or to 'one-half of my lot,' may be made sufficient by extrinsic evidence." *Decker v. Stansberry,* 249 Ill. 487, 492, is very enlightening upon this subject, and based upon extrinsic evidence the court construed the deed so that it conveyed the land which the grantor actually owned. (*Sharp v. Thompson,* 100 Ill. 447, 450; *Boone v. Clark,* 129 Ill. 466, 501.) The rule is that where there is a true description of the property, but containing within it a circumstance, not of the property itself, but of the location of the property, its geographical position, that is ambiguous or incorrect, then the words creating the ambiguity should be rejected as surplusage. (*Myers v. Ladd,* 26 Ill. 415, 417; *Hutton v. Arnett,* 51 Ill. 198, 201; *Spaulding v. Mozier,* 57 Ill. 148, 150.) The rule is much more liberal in connection with the description of personal property, and extrinsic oral testimony is admissible to explain ambiguities and to point out the property which it was the intention of the parties to convey.

In *Morrison v. Elzy,* 190 Ill. App. 374, 379, this court held: "An incorrect description of a part of the property included in a chattel mortgage will not invalidate the mortgage as to the part correctly described. If the description of the property in a chattel mortgage is such as will enable third persons to identify the property, aided by inquiries which the mortgage indicates, then the mortgage is constructive notice to parties even who purchase in good faith. A description wholly false voids the mortgage, but if a part of the description only is false, this may be rejected and the mortgage will take effect, if the remainder of the description is sufficient, aided by inquiries which the mortgage

suggests, to enable the property to be identified. *Boyle v. Miller,* 93 Ill. App. 627, 5 Am. & Eng. Encyc. of Law, 958; 6 Cyc. 1036.''

Error is assigned based upon the ground that a part of said indebtedness, secured by said chattel mortgage, was for an indebtedness to accrue in the future and that a portion of said indebtedness represented a contingent liability only. As to the indebtedness to accrue in the future at the time the mortgage was given, Radcliff had left his tractor with appellees to be repaired and the work of repairing had not been completed or the bill for repairs rendered. The work was performed by appellees in accordance with the contract, and the repair bill amounted to the sum of about $208, making the total indebtedness $1,117.60, for which the one thousand-dollar note was given. This indebtedness was properly secured by the chattel mortgage. In *Good v. Woodruff,* 208 Ill. App. 147, 150, it was held: ''A mortgage may be made to secure future advances and become a prior lien for the amount loaned, although no money is advanced until after subsequent mortgages are in force. *Schimberg v. Waite,* 93 Ill. App. 130; *Collins v. Carlile,* 13 Ill. 254; *McConnell v. Scott,* 67 Ill. 274; *Ackerman v. Hunsicker,* 85 N. Y. 43; *Platt v. Griffith,* 27 N. J. Eq. 207; 1 Jones on Mortgages, sec. 372. And this is true although the mortgage does not state that it is given to secure future advances. *Collins v. Carlile, supra; Shirras v. Caig,* 7 Cranch (U. S.) 50; *Platt v. Griffith, supra.''*

Error is assigned on the ground that a portion of said indebtedness represented a contingent liability, appellees having signed a note with said Radcliff at the bank for $394, which note was not yet due and it is contended that the proofs do not show that appellees will have to pay the note. It was held in *Goodheart v. Johnson,* 88 Ill. 58, 61: ''It is insisted that upon the state of facts appearing, the chattel mortgage was fraudulent and void as against creditors. The trans-

action was in fact somewhat different from what it appeared to be on its face. Still, if the mortgage, for the most part, was not to secure the payment of an absolute debt, as it purported, but was in truth, and in good faith, to secure against a contingent liability as surety, the latter would be a good consideration and sufficient to sustain the mortgage. And although appellee had not in fact paid the debts for which he was surety, if he would have them to pay, as was the undisputed testimony, he might well hold the property or its proceeds to apply to the payment of such debts.''

From all the testimony in this case it is reasonable to infer that appellees will be required to pay the note at the bank which was signed by them, with Radcliff, and that it and the other indebtedness which the chattel mortgage was given to secure, constituted bona fide indebtedness owing by said Radcliff.

Finding no error in the record which will warrant a reversal of the cause, the judgment of the county court of Coles county is affirmed.

*Affirmed.*